## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## EASTERN DIVISION

_____
                                                    )
**PEARSON'S PHARMACY, INC.,**                       )
                                                    )
                          **Plaintiff,**            )        **Civil Action No.: 3:05-cv-1072-F**
                                                    )
        **v.**                                      )
                                                    )
**BLUE CROSS AND BLUE SHIELD**                      )
**OF ALABAMA,**                                     )
                                                    )
                          **Defendant,**            )
_____

## BLUE CROSS AND BLUE SHIELD OF ALABAMA'S
## BRIEF IN OPPOSITION TO REMAND

### Introduction

The Plaintiff, Pearson's Pharmacy ("Plaintiff"), does not deny that the diversity requirements set forth in the Class Action Fairness Act of 2005 ("CAFA"), codified at 28 U.S.C. § 1322(d), have been met in this case. Nor does Plaintiff argue that the jurisdictional amount in controversy requirement is not satisfied. The Plaintiff merely contends that Blue Cross and Blue Shield of Alabama ("Blue Cross") has not proved that these requirements are satisfied.

With respect, Plaintiff's argument misses the mark, and does not recognize the fundamental changes that CAFA worked, dramatically altering the jurisdictional analysis in cases such as this one. As demonstrated below, Plaintiff's Motion to Remand fails to satisfy the burden placed on Plaintiff by CAFA. Moreover, even assuming that, contrary to the clear legislative intent in CAFA, the burden fell upon the party opposing remand, Blue Cross has submitted sufficient evidence to meet such a burden. As such, Plaintiff's Motion to Remand is due to be denied.

Additionally, as set forth below, it is clear that the Plaintiff's Complaint fundamentally concerns the prescription drug benefits coverage available to Blue Cross subscribers – the great majority of which are participants in ERISA plans established by their employers to provide health benefits coverage to their employees. As a result, this Court has jurisdiction over this matter under ERISA, and on this alternative ground, the Plaintiff's Motion is also due to be denied.

## I.   Removal of This Case Was Proper Under the Class Action Fairness Act of 2005.

### A.   Under CAFA, Plaintiff Bears the Burden of Demonstrating that Removal Was Improvident.

As the Supreme Court has noted, in addressing statutory construction, the Court must "interpret the words of the statute in light of the purposes Congress sought to serve." *Norfolk Redev. and Housing Auth. v. Chesapeake and Potomac Tel. of Va.*, 464 U.S. 30, 36 (1983); *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 608 (1979). In the context of CAFA, the text of the bill passed by Congress and signed by the President states that the purpose of the new law was to "restore the intent of the framers of the United States Constitution by providing for Federal court consideration of interstate cases of national importance under diversity jurisdiction. . ." Pub. L. 109-2 Sec. 2 (b)(2). The intent of CAFA was to completely alter the jurisdictional analysis in the context of multi-state class actions. That intent is not only noted in the law itself, but it is also expressed clearly and emphatically throughout the Senate Report.

As stated in the Report of the Senate Committee on the Judiciary, "[o]verall, new section 1332(d) is intended to expand substantially federal court jurisdiction over class actions. **Its provisions should be read broadly, with a strong preference that interstate class actions should be heard in federal court** if properly removed by a defendant." 109 S. Rpt. 14 at 43

(Report of the Senate Committee on the Judiciary on S. 5, the Class Action Fairness Act of 2005)

(emphasis added).  As further noted by the Senate Report,

> Pursuant to new subsection 1332(d)(6), the claims of the individual class members in any class action shall be aggregated to determine whether the amount in controversy exceeds the sum of $5,000,000 (exclusive of interest and costs).  The Committee intends this subsection to be interpreted expansively.  If a purported class action is removed pursuant to these jurisdictional provisions, the named **plaintiff(s) should bear the burden** of demonstrating that the removal was improvident (*i.e.*, that the applicable jurisdictional requirements are not satisfied).  And if a federal court is uncertain about whether 'all matters in controversy in a purported class action do not in the aggregate the sum or value of $5,000,000 the court should err in favor of exercising jurisdiction over the case.

*Id*.  (emphasis added)

As Plaintiff pointed out in its Motion, CAFA included two exceptions which either require or allow the Court to decline jurisdiction over a case that meets the minimal diversity requirements set forth in the statute.  28 U.S.C. § 1332(d)(3); 28 U.S.C. §1332(d)(4)(A-B).[1] However, even in the area of these exceptions, the burden remains with the Plaintiff to demonstrate that the factors set forth therein have been met.  As stated by the Senate Report,

> [i]t is the Committee's intention with regard to each of these exceptions that the party opposing federal jurisdiction shall have the burden of demonstrating the applicability of an exemption. Thus, if a plaintiff seeks to have a class action remanded under section 1332(d)(4)(A) on the ground that the primary defendant and two-thirds or more of the class members are citizens of the home state, that plaintiff shall have the burden of demonstrating that these criteria are met by the lawsuit.

*Id.* at 44.  The Report notes further that

---

[1] Blue Cross notes that 28 U.S.C. §1332(d)(4)(A-B) clearly does not apply as Blue Cross has shown that Alabama pharmacies headquartered outside the state comprise over 1/3 of all potential class members.  *See* Section I(C), *infra*; Second Hiller Aff. at ¶ 7-8 attached hereto as Exh. "1".  Therefore, it is impossible that "greater than two-thirds of the members of all proposed classes in the aggregate are citizens of the State in which the action was originally filed."  Although Plaintiff has the burden to show the applicability of an exception to federal jurisdiction under CAFA, it could not, even if it tried, show the exception stated in 28 U.S.C. §1332(d)(4) would apply.

it is the intent of the Committee that the named plaintiff(s) should bear the burden of demonstrating that a case should be remanded to state court (*e.g.* the burden of demonstrating that more than two-thirds of the proposed class members are citizens of the forum state.)  Allocating the burden in this manner is important to ensure that the named plaintiffs will not evade federal jurisdiction with vague class definitions or other efforts to obscure the citizenship of class members.

*Id.*

Courts interpreting the provisions of CAFA have consistently held that the legislative intent clearly requires a change in how the burden is allocated when the issue of federal jurisdiction is raised.  For example, as stated by the District Court in the Northern District of California,

[w]hile courts ordinarily are required to strictly construe a removal statute against removal jurisdiction, rejecting jurisdiction if there is any doubt as to the right of removal in the first instance, the legislative history of CAFA instructs that CAFA's jurisdictional provisions should be read broadly, with a strong preference that interstate class actions should be heard in federal court if removed by any defendant.  If a Federal court is uncertain . . . the court should err in favor of exercising jurisdiction over the case. Similarly, while the defendant ordinarily bears the burden of proving that removal was proper, CAFA's legislative history indicates that the plaintiff has the burden of proving that an action removed under CAFA should be remanded.

*In re Textainer Partnership Sec. Litigation*, 2005 WL 1791559 (N.D. Cal. July 27, 2005) (internal citations and quotation marks omitted).  Citing *Textainer*, the District Court of Oregon came to the identical conclusion regarding the allocation of the burden under CAFA in a decision issued on September 8, 2005.  *Lussier v. Dollar Tree Stores, Inc.*, 2005 WL 2211094 (D. Or. Sept. 8, 2005); *See also Yeroushalmi v. Blockbuster, Inc.*, 2005 WL 2083008 (C.D. Cal. July 11, 2005).  As noted by another district court, "[a]lthough the burden of proof is not addressed in either the text of the original or the text of the new statute, the CAFA was clearly enacted with the purpose of expanding federal jurisdiction over class actions. . . . To this end, the Committee

4

Report expresses a clear intention to place the burden of removal on the party opposing removal to demonstrate that an interstate class action should be remanded to state court." *Berry v. American Express Pub. Corp.*, 381 F. Supp. 2d 1118, 1122 (C.D. Cal. 2005); *see also Dinkel v. General Motors Corp.*, 2005 WL 3006728 (D. Me. Nov. 9, 2005); *Waitt v. Merck & Co., Inc.*, 2005 WL 1799740, *2 (W.D. Wash. 2005); *Natale v. Pfizer, Inc.*, 379 F.Supp.2d 161, 168 (D. Mass. 2005), *aff'd on other grounds by* 2005 WL 2253622 (1st Cir. Sept. 16, 2005) (per curiam).[2]

        In its Motion, Plaintiff argues that Blue Cross has failed to demonstrate to the Court that the jurisdictional requirements under CAFA have been met.  Given the clear intent by Congress to expand federal jurisdiction and place the burden of demonstrating the lack of federal jurisdiction on the party contesting it – in this case Plaintiff – Plaintiff's argument must fail.  The Senate Report instructs that the plaintiff has the burden not only to prove removal was improvident, but also to prove the applicability of an exception to federal jurisdiction under CAFA.  Since CAFA's adoption in February 2005, the great majority of courts reviewing motions to remand have fulfilled the congressional intent underlying this new statutory scheme by demanding plaintiffs shoulder the burden.  This change in the burden is consistent with the Congressional goal of eliminating abuses in the class action context, and curtailing jurisdictional game-playing.  Congress specifically noted that their intent in passing CAFA was to radically expand federal jurisdiction over class actions.  Failure to place the burden on the party seeking to avoid federal jurisdiction as Congress intended would frustrate the purpose of the statute, and

_____

[2] A panel in the Seventh Circuit refused to consider the legislative history on the grounds that the statute was not ambiguous.  *Brill v. Countrywide Home Loans, Inc.*, 427 F 3d.446 (7th Cir. 2005). Blue Cross urges this Court to reject that panel's reasoning as having overlooked the Supreme Court's directive, as noted above, that a court should "interpret the words of the statute in light of the purposes Congress sought to serve."  *Norfolk Redev. and Housing Auth. v. Chesapeake and Potomac Tel. of Va.*, 464 U.S. 30, 36 (1983); *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 608 (1979).

would foster jurisdictional game-playing by class action plaintiffs – something the Act expressly sought to avoid.  109 S. Rpt. 14 at 4-5.  As noted in the Senate Report, "[a]llocating the burden in this manner [to Plaintiff] is important to ensure that the named plaintiffs will not be able to evade federal jurisdiction with vague class definitions or other efforts to obscure the citizenship of class members."  *Id.* at 43.  Thus, the directive of Congress should be carried out and any effort to evade federal jurisdiction here should be summarily halted.

Plaintiff has produced no evidence to support its contention that more than two-thirds of the proposed class are Alabama citizens.  Likewise, it has not demonstrated the amount in controversy to be less than the statutory threshold.  Instead of producing any evidence to this Court, all it has done is attack the sworn testimony presented by Blue Cross.  An attack on the credibility of evidence is no substitute for producing evidence, especially when that party has the burden of proof.  As Plaintiff has failed to meet its burden, the Court's analysis can, and should, end there.  However, as demonstrated below, Blue Cross has placed before this Court sufficient information and evidence to conclude that jurisdiction exists under CAFA.

**B.      Plaintiff Has Failed to Meet Its Burden of Showing That the Amount in Controversy Requirement Has Not Been Met.**

As previously discussed, the burden is on the <u>Plaintiff</u> to show that the $5,000,000 minimum amount in controversy requirement for jurisdiction under the CAFA has <u>not</u> been met. Plaintiff has failed to carry this burden.  All the Plaintiff does is disagree with the evidence provided by the affidavit of George S. Hiller, III, without any basis or proffering any evidence. This is not enough.  The only competent evidence provided to this Court shows that the jurisdictional requirement has been met. Where the plaintiff fails to contradict the evidence provided by the defendants showing that the amount in controversy exceeds $5,000,000, the

amount in controversy requirement has been satisfied. *See, e.g., Senterfitt v. SunTrust Mortgage, Inc.*, 385 F. Supp.2d 1377, 1382-1383 (S.D. Ga. 2005) ("Because Senterfitt does not offer any evidence that casts doubt on SunTrust's estimates of the number of faxed loan payoff statements or number of class members, I accept Defendant's uncontradicted data for the purpose of determining whether the amount in controversy requirement has been met."); *Waitt v. Merck & Co., Inc.*, 2005 WL 1799740 (W.D. Wash. 2005) (holding that plaintiff failed to meet its burden when it failed to identify economic damages suffered by class, and did not recognize that that it was seeking punitive damages).

Indeed, even if the burden was on Blue Cross, the burden has been met. As Mr. Hiller testified, the class as defined by the Plaintiff consists of approximately 1335 pharmacies. Second Hiller Aff. ¶ 4. Taking into account compensatory damages alone, for the jurisdictional requirement to be met, each of the 1,335 class members would only need to have $3,745.19 at stake. It should be noted that Plaintiff in this case, contrary to the approach taken in the similar cases filed by class counsel, has taken no steps whatsoever to limit the damages sought by the class, or by individual class members.

Further, Plaintiffs alleges that Blue Cross has retained money owed to the Plaintiff. As Mr. Hiller testified, Blue Cross sent out pharmacy reimbursements of over two billion dollars ($2,000,000,000) between 1999 and 2005. Second Hiller Aff. ¶ 9. For the jurisdictional requirement to be met, Blue Cross would only have to be alleged to have retained a miniscule one-quarter of one percent (0.25%) of the reimbursements. Plaintiff does not contend that the alleged actions by Blue Cross are so miniscule. In fact, Plaintiff alleges that Blue Cross' actions have "dramatically increased the profits of Defendant." Complaint at ¶ 11. Clearly, therefore, the amount in controversy requirement has been met.

Finally, Plaintiff in this case seeks an award of punitive damages against Blue Cross. Blue Cross submits herewith a list of non-wrongful death jury verdict awards in Alabama in the past ten years as Exhibit "2". These awards demonstrate clearly that the amount in controversy requirement is satisfied in this case[3]. Case law also supports a determination that the amount in controversy has been met where the Plaintiff also seeks punitive damages, attorney's fees, and injunctive relief. For example, in *Yeroushalmi v. Blockbuster, Inc.*, 2005 WL 2083008 (C.D. Cal. 2005), the district court found that the amount in controversy requirement in a removed class action had been satisfied where "in addition to compensatory damages, restitution, and disgorgement, plaintiff [sought] injunctive relief, punitive damages, and attorney's fees." *Id.* at *5. With regard to punitive damages, the court in *Yeroushalmi* noted that "[u]nder the CAFA, it is the plaintiff's burden to show that punitive damages will be limited in such a way as to avoid meeting the jurisdictional amount." *Id.* The amount in controversy was met because the plaintiff was unable to make any such showing, just like the plaintiff is unable to do in this case. Therefore, because the amount in controversy requirement has been met, the motion to remand should be denied.

**C.**    **Plaintiff Has Failed to Meet Its Burden of Showing That the Diversity of Citizenship Requirement Has Not Been Met.**

Just as with the amount in controversy requirement, the burden is on the <u>Plaintiff</u> to show that the diversity of citizenship requirement has <u>not</u> been met. Plaintiff again fails to meet this

---

[3] While Blue Cross asserts the burden to show the amount in controversy has not been met is on the plaintiff in this instance, even if the burden was on the defendant, Blue Cross has met it. A removing defendant only has to show that the amount in controversy more likely than not exceeds the jurisdictional requirement. *Owens v. Life Ins. Co. of Ga.*, 289 F.Supp.2d 1319, 1327 (M.D. Ala. 2003); *see also Tapscott v. MS Dealer Service Corp.,* 77 F.3d 1353, 1357 (11th Cir. 1996)*; Bolling v. Union Nat'l Life Ins. Co.*, 900 F.Supp. 400, 405 (M.D. Ala. 1995).

burden. On this issue as well, though, even if the burden were placed on the Defendant, Blue Cross has submitted evidence that is more than sufficient to satisfy it.

CAFA provides that the district courts have jurisdiction over a class action where more than one-third of the class members are citizens of states other than the state in which suit was brought. 28 U.S.C. §1332(d)(4). Plaintiff does not dispute that there are 1,335 class members. Second Hiller Aff. ¶4. The Hiller affidavit establishes that at least 450 pharmacies receive payments at locations outside the state. Second Hiller Aff. at ¶ 7-8. Attached to this memorandum are corporate records from the website of the Secretary of State of the State of Alabama indicating the domicile of these entities. "Corporate Details" data attached hereto as Exh. "3". These pharmacies are foreign corporations with both their State of incorporation and their principal place of business outside of Alabama. Thus, Blue Cross has demonstrated that over 1/3 of the potential class members are non-Alabama citizens. Instead of proffering any evidence to rebut this showing, Plaintiff merely states its disagreement.[4] Such conclusory statements are proof of nothing and are not enough to establish that remand is required. Thus, Plaintiff has failed to meet its burden of showing that the diversity requirement has not been satisfied.

The only evidence which has been provided shows that, indeed, more than one-third of the class members have as their state of incorporation and principal place of business states other than Alabama. Therefore, this Court has subject-matter jurisdiction under CAFA, and the motion to remand should be denied.

---

[4] Plaintiff complains that Mr. Hiller's statements regarding the number of and location of payments to the pharmacies are unsupported. Of course, it is the Plaintiff's burden to bring forth evidence that the statements are not correct, and they have not done so. The information is, in fact, accurate, as shown by the attached copy of Blue Cross's payee list, showing the pharmacies at issue and where payment is sent. See Second Hiller Aff. at ¶ 4 and Exh. A thereto.

D.    **The Factors Set Forth in 28 U.S.C. § 1332(d)(3) Weigh Heavily in Favor of the Court Exercising Jurisdiction Over This Matter.**

In cases in which greater than one-third but less than two-thirds of the members of the proposed plaintiff class and the primary defendants are citizens of the state in which the action was originally filed, CAFA enumerates factors to guide federal courts in deciding whether to exercise jurisdiction.  These factors include:

(a) whether the claims asserted involve matters of national or interstate interest;

(b) whether the claims asserted will be governed by the laws of the State in which the action was originally filed or by the laws of other States;

(c) whether the class action has been pleaded in a manner that seeks to avoid federal jurisdiction;

(d) whether the action was brought in a forum with a distinct nexus with the class members, the alleged harm, or the defendants;

(e) whether the number of citizens of the State in which the action was originally filed in all proposed plaintiff classes in the aggregate is substantially larger than the number of citizens from any other state, and the citizenship of the other members of the proposed class is dispersed among a substantial number of states; and

(f) whether during the 3-year period preceding the filing of that class action, 1 or more other class actions asserting the same or similar claims on behalf of the same or other persons have been filed.

28 U.S.C. §1332(d)(3).  In addition to the reasons set forth above, and keeping in mind that the burden ultimately rests upon a plaintiff to show removal was improvident under CAFA, these discretionary factors further argue in favor of finding federal jurisdiction in this instance.

First, the claims asserted in Plaintiff's Complaint significantly impact matters of interstate interest.  Blue Cross has submitted evidence establishing that at least 450 Alabama pharmacies within its network are corporations with both their state of incorporation and their

principal place of business outside the state.  *See* Exh. 3 and Second Hiller Aff. at ¶¶ 7-8.

Moreover, during 2005, Blue Cross transmitted over $261 million across state lines to out-of-

state repositories as reimbursements to participating pharmacies.  A large portion of this money,

though not all of it, was paid to the 450 pharmacies that Blue Cross has demonstrated are foreign

corporations.  In contrast, Blue Cross made reimbursements of $178 million within Alabama

during the same time period.  *See* Second Hiller Aff. at ¶ 10.  Blue Cross believes that the

amount paid across state lines as compared to the amount paid within Alabama is essentially the

same for each of the years within the class period.

Resolution of Plaintiff's claims will require this Court to interpret contract provisions

entered into between interstate parties.  Future transactions between these parties will also be

affected by how this Court decides questions surrounding the current reimbursement

arrangement and the "Average Wholesale Price".  Therefore, matters of "interstate interest" are

undeniably at stake in this litigation.  Second, if this Court finds this action to be preempted by

ERISA, the federal common law of ERISA will govern the causes of action at issue.  With

respect to §1332(d)(3)(B), this factor appears to suggest a federal court is as competent as a state

court, if not more, to apply federal law.

This class action has not been pleaded in a manner that seeks to avoid federal jurisdiction.

*See* Plaintiff's Motion to Remand and Incorporated Memorandum of Law at p. 7.  A cursory

review of Plaintiff's Complaint reveals no such intent on the part of Plaintiff.  First, the class

definition located in paragraph 7 of Plaintiff's Complaint broadly defines the class.  There is no

exception made for pharmacies headquartered out-of-state or reimbursements arising from

claims from ERISA plans.  Second, the prayer for relief following paragraph 20 of Plaintiff's

Complaint requests punitive damages on behalf of plaintiff and class members.  No effort was

made by Plaintiff to limit this request to the jurisdictional threshold set out in CAFA, and as shown above, the claims in this lawsuit could very easily exceed this amount. As removal in this instance was not an unforeseeable event and Plaintiff's Complaint makes no attempt to avoid federal jurisdiction, this factor should weigh in favor of removal.

This action was originally brought in the Circuit Court of Tallapoosa County. While the named plaintiff is admittedly a resident of that county, the proposed class includes members from nearly every county in Alabama and many states across the country. Blue Cross is a resident of Jefferson County and the alleged harm is dispersed nationwide, as Plaintiff alleges class members received reimbursements based on an improperly calculated formula in breach of a participating pharmacy agreement with Blue Cross. Thus Tallapoosa County poses no particular nexus with the class members, Defendant Blue Cross or the alleged harm, and should not prevent this Court from exercising discretion and maintaining this case in the Middle District of Alabama.

Blue Cross has shown that over 1/3 of all participating pharmacies, the proposed class members, have as their principal place of business and their state of incorporation places outside of Alabama. *See* Exh. 3 and Second Hiller Aff. at ¶¶ 7-8. Therefore neither in-state nor out-of-state members of the proposed class are "substantially larger" in the aggregate. While the out-of-state class members are from several different states, this should not argue against removal as most of those members are comprised of large chain pharmacies with agents of process in Alabama. *See* Exh. 3. Accordingly, no notice of opt-out concerns should be present. As stated above, however, remanding this case to Tallapoosa County, the original forum for this suit, affords few benefits when compared to a federal court from the Middle District of Alabama which is a more centralized and accessible location for all parties to litigate.

Lastly, with respect to sixth factor set out in 28 U.S.C. §1332(d)(3), during the last 3-year period preceding the filing of this class action, there have been several class actions asserting the same or similar claims on behalf of the same or other persons. Blue Cross is merely one of several insurers whose pharmacy reimbursement formulas have been challenged. *See, e.g., CAM Enters., Inc. v. Argus Health Systems*, In the United States District Court for the Northern District of Alabama, CV-05-702; *Main Drug, Inc. v. Pharmacare Mgmt.*, CV-05-23 (Bullock County); *Main Drug, Inc. v. WHP Health Initiatives, et al.*, CV-05-19 (Bullock County); *CAM Enters., et al. v. Merck & Co., et al.*, CV-05-884 (Jefferson County); *CAM Enters., et al. v. Cigna Healthcare of Ga.*, CV-05-938 (Jefferson County); *Eufaula Drugs, Inc. v. F. Dohmen Co. Restat.*, CV-05-29 (Barbour County); *Eufaula Drugs, Inc. v. Envision Pharm.*, CV-05-28 (Barbour County); *Eufaula Drugs, Inc. v. A Claim, Inc.*, CV-05-32 (Barbour County); *Eufaula Drugs, Inc. v. A & A Drug, Inc., et al.*, CV-05-33 (Barbour County); *Eufala Drugs, Inc. v. Tmesys Inc.*, CV-05-34 (Barbour County); and *Eufaula Drugs, Inc. v. Medical Security Card Co., et al.*, CV-05-35 (Barbour County). In fact, two such cases are pending before this very Court, *Main Drug, Inc. v. Aetna, Inc.*, CV-05-292-F and *Eufaula Drugs, Inc. v. TDI Managed Care Services*, CV-05-293-F. The objectives of uniformity and judicial efficiency envisioned by the drafters of CAFA are given full effect by keeping these cases in federal court and not subjecting similar defendants interpreting similar contracts to varying verdicts and the possibility of conflicting injunctions.

A comprehensive view of these factors suggests that this Court should exercise its discretion and allow this case to proceed in federal court. The modern reality of the pharmacy market is that a large share of the market is dominated by national chain pharmacies. Although they conduct business in Alabama, they are headquartered elsewhere. It is thus inevitable that

interstate commerce has and will be affected here as Blue Cross has demonstrated it sent over $261 million out of state during the relevant time period. *See* Second Hiller Aff. at ¶ 10. It is a well-known legal axiom that the plaintiff is the "master of his complaint". In this case, Plaintiff has admitted that this action was not pleaded in a manner to avoid federal jurisdiction but rather was pled to include diverse plaintiffs as well as reimbursements for prescription drugs provided to ERISA Plan participants. Further, the citizenship of the parties is roughly equivalent in this matter and thus this factor is neither applicable nor persuasive here. Lastly, as demonstrated above, this class action is merely one of several against insurers in which the same proposed class has been defined. This factor strongly weighs in favor of the exercise of federal jurisdiction to ensure consistent rulings follow. In sum, when viewing the factors of 28 U.S.C. §1332(d)(3)(A)-(F) as a whole, on balance they argue in favor of this Court exercising jurisdiction over this matter.

## II.    This Court Also Has Jurisdiction Over This Matter Under ERISA.

In addition to this Court's jurisdiction under CAFA, Blue Cross removed this civil action pursuant to 28 U.S.C. §§ 1441 and 1446 because the complaint filed against it by Plaintiff presents claims that are completely preempted by the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001, *et seq*. ("ERISA"). Plaintiff's claims clearly meet the test for complete ERISA preemption adopted by the Eleventh Circuit in *Butero v. Royal Maccabees Life Ins. Co.*, 174 F.3d 1207, 1212 (11th Cir. 1999). Consequently, even though Plaintiff has cast its claims as arising under state law, the claims are necessarily federal in character, and, therefore, are removable. *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63-64 (1987).

The Complaint alleges claims for damages for Blue Cross's purported "unfair, unlawful, fraudulent, wrongful and deceptive practice of failing to fully, timely and properly **reimburse Plaintiff for filling prescriptions on behalf of its [Blue Cross's] insureds, members or clients.**"   Complaint, ¶ 8 (emphasis added).   These claims are quintessentially claims for benefits due under the terms of Plaintiff's Blue Cross customers' ERISA plans.  They therefore meet the four-part test for complete ERISA preemption adopted by the Eleventh Circuit in *Butero*:  (1) The majority of Blue Cross subscribers for whom Plaintiff fills prescriptions are participants in ERISA plans; (2) Plaintiff has standing to sue under ERISA, because Plaintiff has effectively taken assignment from its Blue Cross customers of their ERISA plan prescription drug benefits available under the plans; (3) Blue Cross is an "ERISA entity," *viz.*, the insurer and/or claims payment administrator of the ERISA plans; and (4) the compensatory relief Plaintiff seeks is akin to that available under section 502(a) of ERISA, which provides that a participant or beneficiary of an ERISA plan may bring an action "to recover benefits due to him under the terms of his plan...."  174 F.2d at 1212.

Governing Eleventh Circuit cases instruct that a provider plaintiff who accepts patient assignments of benefits is an ERISA beneficiary with standing to sue under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), to "recover benefits due to him under the terms of his plan." *HCA Health Serv. of Georgia, Inc. v. Employers Health Ins. Co.*, 240 F.3d 982, 991 & n. 19 (11th Cir. 2001); *Cagle v. Bruner*, 112 F.3d 1510, 1512-16 (11th Cir. 1997).  Rather than address these controlling Eleventh Circuit cases, Plaintiff instead merely cites two non-controlling cases from other jurisdictions.  For all these reasons, Plaintiff's Motion to Remand must be denied.

### A.    Factual Background Relevant to ERISA

Blue Cross is an Alabama not-for-profit corporation that is organized for the purpose of managing health care plans, many of which are established and maintained by employers to provide medical, surgical, or hospital care or benefits to their employees.  Such plans are governed by ERISA.  Approximately 70% of Blue Cross's members receive their health benefits coverage under ERISA plans insured or administered by Blue Cross.  Caudle Aff., attached as Exhibit "4".  Blue Cross has entered into a Participating Pharmacy Agreement ("the Agreement", attached as Exhibit "5") with certain pharmacies, including Pearson's, which agree to provide prescription drugs to participants in health care plans that are insured or administered by Blue Cross.    Pursuant to the Agreement, pharmacists complete and submit claims and/or claims authorization requests for prescriptions filled for their Blue Cross customers directly with Blue Cross via an on-line claim filing system and, in turn, Blue Cross pays those claims in accordance with the terms of the subscriber's health care plan.  The Agreement provides in relevant part:

> The Participating Pharmacy agrees to provide services…to all subscribers and their dependents ("Members") **covered by and in accordance with the agreement or contract by which the Corporation ("Blue Cross") provides, indemnifies, or administers health care benefits to Members (the "Benefit Agreement").**    Participating Pharmacy agrees to make any adjustments necessary to accurately reflect correct claim data. Participating Pharmacy agrees to file claims through Corporation's electronic on-line claims processing system within 45 days of service.

*Id.*,  p. 1 (emphasis added). [5]

---

[5] Plaintiff's participating pharmacy agreement with Blue Cross defines "Benefit Agreement" as "the agreement or contract by which the Corporation ("Blue Cross") provides, indemnifies, or administers health care benefits to Members (the "Benefit Agreement")".  *See* Exh. 5.  In cases where an employer enters into a Benefit Agreement with Blue Cross to provide health benefits to the employer's employees, the employer creates an "employee welfare benefit plan" governed by ERISA.  ERISA § 3(1), 29 U.S.C. § 1002(1).  *See Dickerson v. Alexander Hamilton Life Ins. Co. of America*, 130 F. Supp.2d 1271, 1273-74 (N.D. Ala. 2001).

As stated in the Participating Pharmacy Manual, **"[b]enefits are always subject to the terms and limitations of the plan…[t]he availability of benefits is always conditioned upon the patient's coverage and the existence of a contract for plan benefits** as of the date of service." Participating Pharmacy Manual, attached as Exhibit "6", p. 1 (emphasis added).

When the claim or claim authorization request is filed on-line with Blue Cross, the pharmacist is informed of the amount of the co-payment and/or allowable charge to collect directly from the customer. Exh. 6 at pp. 3, 25. The pharmacist is also informed of the amount of payment that the pharmacy will receive for the prescription drug provided to the customer. *Id.*, p. 3. The pharmacy is thus effectively an assignee of the participants or beneficiaries of the aforementioned ERISA-governed employee welfare benefit plans, and is therefore eligible to receive payment for prescriptions filled for these participants and beneficiaries pursuant to the terms of the plans and the Agreement.

### B.    Analysis of ERISA Jurisdiction Over This Matter

In a recent series of cases, the Eleventh Circuit has set forth specific factors governing when a case is subject to complete ERISA preemption. First, there must be a relevant ERISA plan. Second, the plaintiff must have standing to sue under that plan. Third, the defendant must be an "ERISA entity." Fourth, the plaintiff must seek "compensatory relief akin to that available under" section 502(a) of ERISA. *Butero*, 174 F.3d at 1212. Because the record before the Court demonstrates that all four factors are present here, Plaintiff's claims are completely preempted by ERISA.

There can be no serious dispute that Plaintiff's claims satisfy the first, third and fourth of the *Butero* factors. First, a number of patients for whom Plaintiff provides prescription drugs are

participants in ERISA plans.  Caudle Aff. at ¶ 3.  *See also* 145 CONG. REC. H8155-05 (daily ed. Sept. 14, 1999) ("nearly 80% of the workers in this county" receive their health coverage through ERISA plans) (statement of Rep. Knollenberg); Linda J. Blumberg, "*Who Pays for Employer Sponsored Health Insurance*," 18 Health Affairs 58 (November/December 1999) (noting that the vast majority of Americans receive their health insurance through employer sponsored benefit plans to which employers contribute).

Second, it is plain that Blue Cross is an "ERISA entity."  *Butero*, 174 F.3d at 1213.  The Eleventh Circuit has made clear that the parties responsible for insuring and/or administering the payment of claims by ERISA plans are ERISA entities.  *Id.*; *Morestein v. National Ins. Servs., Inc.*, 93 F.3d 715, 722-23 (11th Cir. 1996).  The allegations in the Complaint clearly relate to those responsibilities.

Third, Plaintiff's claim for "damages" is, in reality, nothing more than an assertion that, in paying prescription drug benefits due under the ERISA plans, Blue Cross failed to pay <u>all</u> of the ERISA benefits that were owed.  The Eleventh Circuit has recognized that, when the recovery sought is for ERISA benefits, a wide variety of state law claims should be recast as ERISA claims, including claims for breach of contract.  *See Butero*, 174 F.3d at 1213.  Because the Complaint seeks additional payments for prescription drugs which were provided by Plaintiff to Blue Cross customers pursuant to the terms of their employee benefit plans, Plaintiff's claims clearly fall within the ambit of section 502.

Two facts are dispositive in this regard.  First, the additional payments sought by Plaintiff are in reality extra payments allegedly owed for services rendered – precisely the type of relief that is accorded under Section 502.  Plaintiff's Participating Pharmacy Agreement with Blue Cross, which incorporates the terms of the ERISA health plans administered by Blue Cross,

makes clear that the payment of claims for benefits is subject to the terms of those plans: "[t]he Participating Pharmacy agrees to provide services…to all subscribers and their dependents ("Members") covered by and **in accordance with the agreement or contract by which the Corporation ("Blue Cross") provides, indemnifies, or administers health care benefits to Members (the "Benefit Agreement")**… Exh. 5 at p. 1 (emphasis added). The Manual likewise provides that "[b]enefits are always subject to the terms and limitations of the plan". Exh. 6 at p. 1. Thus, any claims for additional benefits under Plaintiff's Agreement with Blue Cross necessarily involve claims for benefits under the terms of the ERISA plans. Second, if the same claims as alleged in Plaintiff's Complaint were brought by a participant in a plan subject to ERISA, there would be no dispute that they would arise under Section 502.

That leaves the second *Butero* requirement – that the plaintiff has standing to sue under ERISA. Two recent Eleventh Circuit cases have clarified that a provider with an assignment of ERISA benefits has standing to pursue a claim under ERISA Section 502, regardless of how such a plaintiff characterizes his or her claim. For example, in *HCA Health Serv. of Georgia, Inc. v. Employers Health Ins. Co.*, 240 F.3d 982 (11th Cir. 2001), the Eleventh Circuit explicitly held that the provider -- who, like Plaintiff, brought state law claims against a health insurer -- had standing to bring an action under ERISA where the provider's patient assigned to the provider his right to recover from the insurer 80% of the costs of his surgery. 240 F.3d at 991. Similarly, in *Cagle v. Bruner*, 112 F.3d 1510 (11th Cir. 1997), the Eleventh Circuit held that a healthcare provider had derivative standing to bring an action against an ERISA plan where the record showed that the minor patient's father signed a form assigning his right to payment of medical benefits to the healthcare provider. 112 F.3d at 1512-16.

Although Blue Cross's Participating Pharmacy Agreement does not require that customers formally execute an assignment of benefits form allowing payment to the pharmacy for the prescription filled for that customer, it is clear by the very nature of the relationship between Blue Cross and its participating pharmacies that the claims or claim authorization requests submitted by the pharmacy on-line are submitted on behalf of the customer. But for the customer and his or her Blue Cross prescription drug coverage under the customer's ERISA plan, the pharmacy would receive no payments at all from Blue Cross for that prescription. *See* Sample Benefits Agreement, attached as Exhibit "7" at p. 12 ("In Alabama benefits are only for prescriptions purchased from Participating Alabama Pharmacies. Prescriptions purchased from Non-Participating Pharmacies in Alabama are not covered.") Plaintiff clearly submits its claim or claim authorization request as an effective assignee of those Blue Cross subscribers who fill prescription drugs at Pearson's Pharmacy. It follows that Plaintiff's state law claims are completely preempted under *Butero*.

In its Motion to Remand, Plaintiff argues that "[n]o ERISA plan exists in this case" and that it is "not seeking any relief available under § 1132(a) – certainly not benefits due under an ERISA plan." Motion to Remand, at p. 9. These erroneous statements are contradicted by the facts of this case and the wording of Plaintiff's own Complaint. Moreover, Plaintiff's assertion that there is no ERISA plan at issue in this case is flatly contradicted by two Northern District of Alabama decisions involving health service provider's claims against Blue Cross. In *Blue Cross and Blue Shield of Alabama v. Peacock's Apothecary, Inc.*, 567 F.Supp. 1258 (N.D. Ala. 1983), the pharmacy argued that the court lacked jurisdiction under ERISA because the participating pharmacy agreement it entered with Blue Cross was not an employee benefit plan. *Id.* at 1267. The court rejected this argument, finding that although the participating pharmacy agreements

"standing alone, are not employee benefit plans under ERISA, the participating pharmacy agreements clearly are part and parcel of ERISA 'employee benefit plans'." *Id.* at 1267. The court thus found that it had jurisdiction over the case under ERISA. *Id.* at 1277.

In the March 15, 2005 decision entered by the Court in *David J. Below, D.C. v. Blue Cross and Blue Shield of Alabama,* CV-04-HS-0246-NE, a true and correct copy of which is attached as Exhibit "8", a chiropractor filed suit against Blue Cross for alleged breaches of his participating chiropractor agreement, including purported untimely payment of claims, unfair denial of requests for reimbursement by the chiropractor, and the imposition of unreasonable patient caps on chiropractic benefits. Dr. Below specifically disavowed any federal causes of action in his complaint. Applying the *Butero* factors, the Court concluded that Plaintiff's claims against Blue Cross were preempted by ERISA and that the plaintiff's motion to remand should be denied. The Court specifically found:

> (1) ERISA plans were indeed involved in the case, as the participating chiropractor agreement entered between Dr. Below and Blue Cross specifically referenced "Benefit Agreements", "defined as agreements in which Blue Cross agrees to provide, indemnify against, or administer chiropractic care benefits. It is undisputed that, for a substantial percentage of Below's patients, the benefit agreements involved are plans govered by ERISA." *Id.*, p. 3 (citations omitted);

> (2) Dr. Below had standing to sue Blue Cross as an assignee of his patient's claims for benefits under their ERISA plans. *Id.*;

> (3) Blue Cross is an ERISA entity, as it "serves as the insurer and/or claims administrator for numerous ERISA employee welfare plans and that 70% of Blue Cross' members receive their benefits through ERISA plans." *Id.*;

> (4) The complaint did seek relief akin to the relief available under ERISA, as the complaint referenced Dr. Below's claims to recover benefits for chiropractic services he rendered and as the participating chiropractor agreement "cannot be enforced without

reference to his patients' benefit agreements…under the Chiropractor Agreement, Below is not entitled to any payment for services unless benefits are due for those services under the members' benefit agreements." *Id.*, p. 5.[6]

Although Plaintiff in the instant case asserts that no ERISA plan is at issue, the terms of the Participating Pharmacy Agreement and Manual show exactly the contrary, as each agreement specifically incorporates and references the subscriber's Benefit Agreement as the controlling document which determines whether the prescription drug will in fact be paid for by Blue Cross. Plaintiff alleges in the Complaint that Blue Cross has wrongly calculated payments for prescriptions filled for Blue Cross subscribers. To resolve this claim, the Court may have to determine whether the subscribers were in fact covered under the terms of the Benefit Agreement they relied on and whether the prescription drug at issue was covered under the terms of the Benefit Agreement. Clearly, ERISA benefit plans are integral to the Court's resolution of the issues in this case. Consequently, Plaintiff's state law claims are completely preempted, and this Court has subject matter jurisdiction over this action. The Court should therefore deny Plaintiff's Motion to Remand.

## Conclusion

This matter was properly removed under both the Class Action Fairness Act of 2005 and ERISA. As demonstrated above, the Plaintiff has failed to meet its burden under CAFA to demonstrate that the case was improvidently removed. In fact, the Plaintiff has not even attempted to do so. As a result, the Plaintiff's Motion is due to be denied. Moreover, Blue Cross

---

[6]  Blue Cross is aware of this Court's recent decisions in *Main Drug, Inc. v. Aetna U.S. Healthcare, Inc., et al.*, Case No. 2:05-CV-292-F and *Eufaula Drugs, Inc. v. TDI Managed Care Services*, CV-05-293-F, in which this Court found that there was insufficient evidence of ERISA preemption of the plaintiff's claims. In the instant case, Blue Cross has provided specific evidence proving that both the Participating Pharmacy Agreement and Manual incorporate by specific reference the Benefit Plans of Blue Cross subscribers as the controlling document for determining whether the prescription drug benefits payments about which Plaintiff complains are payable. Blue Cross has thus proved that the Participating Pharmacy Agreement is "part and parcel" of the health benefits plans administered or insured by Blue Cross and that ERISA does preempt Plaintiff's claims in this case.

has introduced sufficient evidence that the requirements of 28 U.S.C. § 1332 are satisfied. Finally, this Court also has jurisdiction under ERISA. For all of these reasons, the Defendant respectfully asks that this Court deny the Plaintiff's Motion to Remand.


s/ JAMES L. PRIESTER_____
One of the Attorneys for Defendant
Blue Cross & Blue Shield of Alabama

OF COUNSEL:
James L. Priester
Edward A. "Ted" Hosp
Grace C. Robinson
MAYNARD, COOPER & GALE, P.C.
1901 Sixth Avenue North
2400 AmSouth/Harbert Plaza
Birmingham, Alabama 35203-2602
(205) 254-1000
Fax: (205) 254-1999


OF COUNSEL:
Jere F. White, Jr.
William H. Brooks
Terrence W. McCarthy
LIGHTFOOT, FRANKLIN & WHITE, L.L.C.
The Clark Building
400 North 20th Street
Birmingham, AL 35203-3200
(205) 581-0700
Fax: (205) 581-0799

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished to counsel listed below via electronic filing on this 22nd day of December, 2005:

Kenneth E. Riley
Farris, Riley & Pitt, LLP
2025 Third Avenue North
The Historic Massey Building, Suite 200
Birmingham, Alabama  35203

James M. Terrell
McCallum, Methvin & Terrell, P.C.
2201 Arlington Avenue South
Birmingham, AL 35205

s/ JAMES L. PRIESTER_____
OF COUNSEL